### Appeal of GEORGE LEAVENWORTH.        Docket No. 1107.

Deduction for debt charged off as worthless allowed on evidence offered.

The unextinguished useful value of a dredge boat abandoned as worthless in 1920 was properly deductible as a business loss of that year.

A taxpayer operating a business as an individual may deduct business expenses paid by checks on his personal bank account in making his income-tax returns.

Submitted February 3, 1925; decided March 16, 1925.

*H. A. Mihills, C. P. A.*, for the taxpayer.
*Willis D. Nance, Esq.*, for the Commissioner.

Before LANSDON, LITTLETON, and SMITH.

This appeal is from an asserted deficiency in income tax of $3,329.57 for the year ended December 31, 1920. From the oral and documentary evidence offered the Board makes the following

FINDINGS OF FACT.

1. The taxpayer is an individual who was engaged in lumber manufacturing, with his principal place of business at Greenville, Miss., during the year ended December 31, 1920. Although not his regular occupation, the taxpayer also engaged to some extent in real-estate

operations during the year in question. He kept his books on the cash receipts and disbursements basis.

2. As a manufacturer of lumber, the taxpayer owned and operated a saw mill, a hoop mill, camp, logging, river and yard equipment, rolling stock, and other property required in the business and held by him to have had an average value of $75,696.41 during the year ended December 31, 1920. On this equipment the taxpayer took depreciation amounting to $10,161.63 as a deduction from his income for the year 1920, but such deduction was reduced by the Commissioner to the amount of $6,786.20. At the hearing of this appeal the taxpayer and the Commissioner stipulated that the correct allowance for depreciation on plant and equipment for the year ended December 31, 1920, is $8,891.

3. Beginning at June 30, 1919, and continuing until December 31, 1920, the taxpayer advanced to J. D. Asher various amounts in cash, aggregating a total of $11,423.02. The amounts advanced were evidenced in their entirety by ledger entries under the name of The Thornton Plantation on the taxpayer's books, and, in addition to the book entries, Asher gave his personal notes to the taxpayer in the amount of $10,000. As security for the Asher notes, and for all other amounts advanced on account of Asher, the taxpayer took a deed of trust on a property known as The Thornton Plantation in the amount of $11,423.02. This deed of trust was subject to two prior deeds of trust aggregating $21,699.98, which were, in fact, first and second mortgages on the property. The deed of trust taken by the taxpayer was a third mortgage on The Thornton Plantation.

4. The Thornton Plantation was bought by Asher on February 25, 1919, for $21,699.98, of which Asher paid $5,000 in cash that he borrowed from a sister of the taxpayer, to whom a first mortgage on the plantation was assigned as security for the loan. For the remainder of the purchase price Asher gave his notes in the amount of $16,699.98, secured by a second mortgage on the property.

5. Asher became insolvent before December 31, 1920. He never made any payments on the debts secured by the first, second, and third mortgages on The Thornton Plantation. In November, 1922, a decree of foreclosure was entered in favor of the holder of the first mortgage on the plantation, and the property was sold by the sheriff of Owens County for about $7,000. On December 31, 1920, after an investigation to ascertain the value of The Thornton Plantation and of the equity evidenced by his third mortgage thereon, the taxpayer charged off his books of account all the advances that he had made to Asher, amounting at that time to $11,423.02, and, in his income-tax return for 1920, deducted that amount from his gross income as a bad debt.

6. Some time during the year 1917, the taxpayer purchased a second-hand dredge boat at a cost of $1,100. This boat proved to be of no value as such. The engine, valued by the taxpayer at $600, and so carried on his books of account, was removed and on December 31, 1920, the remaining cost of the boat, less depreciation of $113.95, was charged off as a loss occuring during the year and deducted from the taxpayer's gross income in his income-tax return in the amount of $786.62.

7. During the year 1920 the taxpayer incurred the following expenses, which he paid by checks on his personal bank account and deducted the same from his gross income for that year:

| | |
|---|---:|
| Interest | $471. 86 |
| State and county taxes | 398. 49 |
| Insurance on rental property | 57. 03 |
| Repairs on rental property | 135. 00 |
| Travel expense | 400. 44 |
| Total | 1, 462. 82 |

He also took depreciation on an automobile used for business purposes in the amount of $400.

8. Upon audit of the taxpayer's income-tax return for the year ended December 31, 1920, the Commissioner reduced the depreciation claimed by the taxpayer on his equipment in the amount of $3,375.43, and disallowed any deduction for the amounts of $11,432.02 charged off as a bad debt, $786.62 charged off as a loss on the dredge boat, $1,462.82 expenses personally paid by the taxpayer, and $400 as depreciation on automobile. As a result of such reduction and disallowances, the Commissioner found an additional tax liability in the sum of $3,329.57 for the year ended December 31, 1920, and so notified the taxpayer in a deficiency letter dated November 21, 1924.

### DECISION.

The tax liability should be computed in accordance with the following opinion. Final decision will be settled on consent or on 10 days' notice in accordance with Rule 50.

### OPINION.

LANSDON: In the appeal the taxpayer asserts that the Commissioner erred: (1) In not allowing sufficient depreciation as deduction from gross income; (2) in denying that the amount of $11,423.02 charged off the taxpayer's books in 1920 was a bad debt within the meaning of the statute; (3) in disallowing a loss of $786.62 resulting from the purchase and partial abandonment of a dredge boat; and (4) in denying that any part of $1,862.82, disallowed as personal expenses, represented allowable deductions from taxable income.

At the hearing the counsel for the Commissioner and the representative of the taxpayer agreed and stipulated that the depreciation on plant and equipment for the year 1920 was $8,891, and therefore no further consideration of that point is necessary.

The oral and documentary evidence offered at the hearing proved that the taxpayer advanced $11,423.02 to J. D. Asher between the dates of June 30, 1919, and December 31, 1920. The only security the taxpayer ever had for such advances was a deed of trust or third mortgage on The Thornton Plantation bought by Asher for $21,699.98 on February 20, 1919, upon which there were prior first and second mortgages of $5,000 and $16,669.98, respectively.

The evidence offered at the hearing shows that on December 31, 1920, and for some time prior thereto, Asher was insolvent. Except for whatever his equity in The Thornton Plantation was worth he

had no resources. The taxpayer was an operator in real estate and was well acquainted with land values in that locality in 1920. In December of that year he made an investigation to ascertain the value of the The Thornton Plantation and became convinced that the property could not be sold, at that time, for a price sufficient to pay more than half of the aggregate amount of debts against it secured by the first and second mortgages. In the light of all the facts disclosed by the evidence, the Board is of the opinion that the taxpayer's claim against Asher was a bad debt because the debtor was insolvent and the security worthless. The amount of $11,423.02 should be allowed as a deduction from gross income of the taxpayer for 1920.

The evidence adduced at the hearing convinces the Board that the only useful value salvaged from the dredge boat bought by the taxpayer in 1917 was in the engine, which was removed and carried on the assets account at $600. All expectation of realizing anything from the sale of the other parts of the boat as junk was abandoned in 1920 and the remaining cost, less depreciation which, correctly computed, was $386.05 at that date, was a proper deduction as a business loss from the income of the taxpayer for the year ended December 31, 1920.

The taxpayer was in business as an individual during the year 1920. Whether he paid business expenses from his personal bank account or from the bank account of his business is wholly immaterial. In either case he is entitled to deduct actual business expenses from his gross income as reported for Federal income tax purposes. In the schedule of expenses submitted by the taxpayer at the hearing of the appeal, the amounts of $471.86 interest; $57.03 insurance on rental property; $135 repairs on rental property; and $275 agreed to by the parties as the correct depreciation on an automobile used for business purposes,—are legal deductions from the gross income of the taxpayer for 1920, and should be allowed. The amount of $400.44, deducted as traveling expenses, was not supported by sufficient evidence to convince the Board that it was incurred entirely for business purposes and is disallowed. The evidence discloses that the taxpayer kept his accounts on a receipts and disbursements basis. The receipted tax bills offered in evidence show on their face that the payments of taxes for which deduction is claimed were made in 1921. The amount involved, $398.49, therefore, is not deductible from gross income for 1920.